

# Major Loss Report

Initial Report
Interim Report XXX
Closing Report

## PROPERTY        CASUALTY XXX

Completed By: L. SHORT      Supervisor: J. MAYER
Date: 6-10-04

Reserve Authority Request X    Amount: $1,000,000
Settlement Authority Request X   Amount: $800,000

### Policy/Claim/Coverage Information

| | |
|---|---|
| Insured: JERRY MCMILLAN PROF. TREE SVC. | Claim Number: K1-004792 |
| Policy Number: 3XZ138766-00 | Policy Period: 9/21/01 – 9/21/02 |
| Date of Loss: 1/9/02 | DED/SIR: 0 |
| Limits: 1,000,000 | Aggregate: 1,000,000 |
| Program: LandPro/TreePro | Line of Business: General Liability |
| Scheduled Location: N/A | Stated Value: N/A |
| Program Manager: NIP | Agent Number: 43-0151 |
| Claimant: Marcia Rhodes, Harold Rhodes, Rebecca Rhodes | |

### Current Reserves on Claim

| Claimant Number: | Claimant Name: | LRC | Open-Res | Paid | Incurred |
|---|---|---|---|---|---|
| 001 | Rhodes, et al. | BODI | 14,000 | 0 | 14,000 |
| 001 | Rhodes, et al. | ALAE | 33,000 | 22,963 | 33,000 |
| 002 | Rhodes, et al. | PROP | 2,000 | 0 | 2,000 |

### Facts and Allegations or Developments

The named insured was performing stump grinding operations for the Town of Medway, Ma. Their Ford F-350 truck and attached stump grinder were parked on the right shoulder of Route 109 in the vicinity of Trotter Drive and straddling the fog line. Two orange cones had been set at the rear of the truck and stump grinder. Medway Police Officer, William Boultenhouse, was the assigned traffic control officer and was on scene directing traffic around the named insured's equipment and stump grinding operations. Plaintiff, Marcia Rhodes was traveling eastbound on Route 109 in her blue 1997 Toyota Corolla at approximately 1:00pm. The weather conditions were chilly and overcast with temperatures in the high 30's to low 40's. Witnesses suggest there was slight precipitation and slick roads. The police investigation does nort confirm this. As Rhodes approached the grinding operations, she followed the direction of Officer Boultenhouse and brought her car to a stop. Defendant, Carlo Zalewski, was operating a, 81,000 pound tractor-trailer rig eastbound Route 109 during the course of his employment with Driver Logistics Services, (DLS). DLS was making a delivery for GAF Building Materials Corp. (GAF). Zalewski rear-ended Rhodes. She was forced off the road and into a tree. Rhodes retained counsel and is perusing claims against Zalewski, DLS, GAF Building Materials, and Penske Truck Leasing Corp. Plaintiffs include Rhodes' husband, Harold, and their teenage daughter, Rebecca. Zalewski and DLS have asserted a 3rd party complaint against the named insured and Town of Medway for contribution, alleging Rhode's injuries or damages were caused wholly or in party by the actions of the insured, in that, the insured had a duty to provide markers, warning signs and traffic control devices and failed this duty.

## COVERAGE

Claims Made: ☐   Occurrence: x   Retro Date:

Specialty National Insurance Company provides general liability coverage to Jerry McMillan Professional Tree Service for policy period 9/21/01 – 9/21/02. The policy limit is $1,000,000 general aggregate limit and a $1,000,000 each occurrence limit. The related auto carrier is OneBeacon. Their involvement and related position is currently unknown. There is no excess coverage available to this insured. The excess letter was sent to the insured on 2/25/04. This loss occurred within the policy period and territory. The allegations directed at the named insured are with regard to placement of signage, not the location of the insured parked vehicle. Therefore, the "arising out of an auto" exclusion does not apply. General liability coverage applies to this occurrence without exception or exclusion.

The carrier for GAF is Zurich. Their policy limit is $2,000,000. Zurich is defending Zalewski, DLS, GAF and Penske. Separate counsel has been retained for each of these defendants. We do not yet understand why Zurich has taken a primary position for Zalewski, DLS Penske or who the DLS and Penske carriers are. Zurich has offered their $2,000,000 policy limit directly to plaintiffs. This offer has been rejected. GAF's excess carrier is AIG. Their policy limit is $50,000,000 in excess of Zurich's $2,000,000 primary policy limit. Defense counsel thinks AIG will participate is mediation and contribute toward settlement only after the Jerry McMillan policy limits have been offered.

## LIABILITY ISSUES AND EVALUATIONS

## DAMAGES

Marcia Rhodes was 48 years old at the time of occurrence. She sustained a "burst" fracture at T-12, closed head injury, subarachnoid hemorrhage, cerebral hematoma, numerous bilateral rib fractures, a left pneumothorax and numerous bruises and contusions. As a consequence of the T-12 "burst" fracture, there was a complete severing of the spinal cord and complete sensory and motor paralysis below T-12. She underwent spinal fusion surgery on January 16, 2002. As a consequence of the paralysis, all bowl and bladder functions have been permanently impaired and is catheter dependant. Given the inability to achieve catheter sanitation, there have been frequent urinary tract infections. There have also been bouts with pneumonia associated with the pneumothorax and rib fractures resulting in irreparable harm to the respiratory system, sacral decubitis ulcers (bed sores), diabetes, pancreatitis and deep vein thrombosis in the left leg. She was treated at the University of Massachusetts Medical Center and transferred to Fairlawn Rehabilitation Hospital on February 5, 2002. While there, she sustained multiple leg fractures while being transferred from her bed to a wheelchair. These fractures went undetected because of the inability to feel pain. She was discharged home on April 16, 2002. Her medical complications are ongoing. As a result of attempting to ambulate in a wheelchair, she has developed tendonitis and bursitis in her upper extremities. For the most part, Rhodes is bed ridden. To date plaintiff experts report and suggest;
- Medical specials are estimated in excess of $1,000,000.
- It will take approximately $250,000 to make the Rhodes' home handicap accessible.
- A handicap van will cost $50,000
- The Life Care Plan suggests future costs of $1,600,000 to $2,300,000
- Future episodic costs are estimated at $515,000 - $650,000
- Loss of household services is estimated at $300,000
- Claimed out-of-pocket expenses are $84,000

Claimed special damages are in the range of $3,869,000 to $4,634,000.
Further, Plaintiff's expert suggests a 30% reduction in life expectancy (a 10.3 year reduction) over a non-paraplegic). The consortium claims of Mr. Rhodes and the daughter will also be significant. The current total and combined demand for settlement of all claims is $19,500,000. There have been no offers made, beyond Zurich's $2,000,000. This offer received no response.

Jury verdicts of similar cases;
- $4,500,000 – Suffolk Superior Court, 8/1/02. 37 year old single mother suffered T9-10 paraplegia as a result of a motor vehicle accident. Medical specials were $2,100,000.
- $3,630,000 – Worcester Superior Court, 10/25/02. 25 year old suffered T7 paraplegia and closed head injury secondary to a motor vehicle accident after being served alcohol by defendant establishment. Plaintiff drove off the road, striking a tree.
- $3,900,000 – Settlement, November, 2003. Plaintiff suffered C5 paraplegia when he entered an unsafe road-side construction site. Plaintiff alleged that there were inadequate warnings of lane changes ahead at the road construction site. The general contractor failed to comply with safety standards relating to the installation, placement an monitoring of safety precautions to warn approaching motorists.
- $3,650,000 – Settlement, September, 2002. Plaintiff suffered T12 paraplegia as a result of an unsafe construction site when he fell from scaffolding
- $2,000,000 – Settlement, December, 2000. 40 year old plaintiff suffered paraplegia at an allegedly unsafe construction site when he fell through and unguarded hole. Plaintiff's BAC was .06 and had traces of marijuana in his blood.
- $3,750,000 - Settlement, August, 1998. 52 year old plaintiff suffered paraplegia as a result of an allegedly unsafe construction site when he fell through a sheetrock covered hole.

- $7,700,000 – Suffolk Superior Court 5/10/04. 90 year old male pedestrian suffered a leg amputation below the knee, cervical fracture and rotator cuff tear when he was struck by backing tractor-trailer rig. Medical specials were $373,000. There were comparative negligence arguments.

We feel the full value of this claim, to include the consortium claims is up to $5,000,000. This analysis includes prevailing jury verdicts and assumes the past and future special damages, as outlined above, are accurate. Defense counsel suggests a verdict could be well in excess of $10,000,000. While there is a pro rata apportionment that will result in a $1,250,000 to $2,500,000 finding against the insured (based on a $5,000,000 to $10,000,000 verdict award), the pre-mediation or pre-trial settlement value could be somewhat compromised as Plaintiffs may be motivated to compromise a settlement with the insured as a way to gather funds to cover the expenses of the

pending trial and put some immediate cash in the hands of the Plaintiffs'. There is no risk to Plaintiffs for taking the insured through trial only to find no negligence or causation is proven against the insured as the only thing that will change is pro rata apportionment. It will change from 25% to 33.3% and the remaining defendants are backed by a $50,000,000 excess policy of insurance. If we do not settle prior to trial and pro rata apportionment of the verdict to the insured is in excess of the insured's $1,000,000 policy limit we anticipate the insured will assign rights to Plaintiffs to proceed back against Specialty National, extra contractually. Therefore, we recommend proceeding forward with pre-mediation and/or mediation settlement authority of $800,000 and request settlement authority in this amount. If settlement is not accomplished at or below the $800,000 level prior to, or at mediation, serious consideration must be given to a pre-trial policy limits offer as a way to terminate the potential for excess exposure to the insured and the potential for extra contractual litigation.

## LITIGATION

Suit was filed in the Superior Court Department of the Trial Court for the Commonwealth of Massachusetts, Norfolk County, on 7/12/02. The firm of Brown, Rudnick Berlack and Israels of Boston is representing the plaintiffs. Defense counsel is Steven Duggen of Lynch & Lynch of South Easton. There was a pretrial hearing held on 04/01/04. The only result of significance coming from this hearing was an agreement to mediate and the related timing of mediation. The court also set this matter for trial on 9/7/04. This is a firm date. There will be no opportunity to continue this date.

Defense counsel has not filed and motions and reports the likelihood of getting out of this matter on a motion For Summary Judgment is 10%, or less.

## RESERVE CHANGE AND/OR SETTLEMENT NARRATIVE

| Recommended reserves and/or settlement on claim | | | | | | | |
|---|---|---|---|---|---|---|---|
| Claimant #: | Claimant Name: | LRC | Current Open-Res | Paid | Incurred | Recommended Open-Res | Suggested Settlement |
| 001 | Rhodes, et al. | BODI | 14,000 | 0 | 14,000 | 1,000,000 | 800,000 |
| 001 | Rhodes, et al. | ALAE | 33,000 | 22,963 | 33,000 | 75,000 | |
| 002 | Rhodes, et al. | PROP | 2,000 | 0 | 2,000 | 2,000 | |

Based on current information, this case has a pre-trial settlement value of up to $800,000 (see damages analysis) and a potential verdict in excess of policy limits. Therefore, we recommend posting a BODI reserve of $1,000,000. To date, we have paid $22,963. There is an $11,563 legal bill outstanding. The costs of defense experts, as outlined in the Action Plan, will be significant. Therefore, we recommend placing the ALAE reserve at $75,000. We will make a revised ALAE reserve recommendation upon receipt of a revised proposed litigation budget.

## PLAN OF ACTION

1. Determine OneBeacon's coverage position and willingness to participate
2. Identify the carriers for DLS and Penske and determine why they are not participating

3. Obtain our own accident reconstruction evaluation in an attempt to defend the allegations made by GAF and anticipated allegations of DLS and Penske.
4. Obtain our own medical expert and life care planner to verify the life care plan costs and claimed medical and other special damages.
5. Obtain the opinions of other accident reconstruction and medical experts.
6. Re-review our position relative to a Motion For Summary Judgment and determine if it remains non-viable.
7. Depose the police offers who performed the original accident reconstruction for the purpose of arguing no causation related to signage
8. Obtain defense counsel's settlement analysis, Suit Evaluation Report and Proposed Litigation Budget.
9. Prepare for and participate in the pending mediation.

**ENCLOSURES**

Authorized by: _____    Date: _____