

**THIS IS NOT A BILL**

# Major Loss Report

Initial Report
Interim Report
Closing Report XXX

**PROPERTY**          **CASUALTY XXX**

Completed By: L. SHORT          Supervisor: J. MAYER
Date: 9-16-04  *DRAFT*

Reserve Authority Request   Amount: $
Settlement Authority Request   Amount: $

### Policy/Claim/Coverage Information

| | |
|---|---|
| Insured: JERRY MCMILLAN PROF. TREE SVC. | Claim Number: K1-004792 |
| Policy Number: 3XZ138766-00 | Policy Period: 9/21/01 – 9/21/02 |
| Date of Loss: 1/9/02 | DED/SIR: 0 |
| Limits: 1,000,000 | Aggregate: 1,000,000 |
| Program: LandPro/TreePro | Line of Business: General Liability |
| Scheduled Location: N/A | Stated Value: N/A |
| Program Manager: NIP | Agent Number: 43-0151 |
| Claimant: Marcia Rhodes, Harold Rhodes, Rebecca Rhodes | |

### CURRENT RESERVES ON CLAIM

| Claimant Number: | Claimant Name: | LRC | Open- Res | Paid | Incurred |
|---|---|---|---|---|---|
| 001 | Rhodes, et al. | BODI | 14,000 | 0 | 14,000 |
| 001 | Rhodes, et al. | ALAE | 33,000 | 22,963 | 33,000 |
| 002 | Rhodes, et al. | PROP | 2,000 | 0 | 2,000 |

### FACTS AND ALLEGATIONS OR DEVELOPMENTS

The named insured was performing stump grinding operations for the Town of Medway, Ma. Their Ford F-350 truck and attached stump grinder were parked on the right shoulder of Route 109 in the vicinity of Trotter Drive and straddling the fog line. Two orange cones had been set at the rear of the truck and stump grinder. Medway Police Officer, William Boultenhouse, was the assigned traffic control officer and was on scene directing traffic around the named insured's equipment and stump grinding operations. Plaintiff, Marcia Rhodes was traveling eastbound on Route 109 in her blue 1997 Toyota Corolla at approximately 1:00pm. The weather conditions were chilly and overcast with temperatures in the high 30's to low 40's. Witnesses suggest there was slight precipitation and slick roads. The police investigation does not confirm this. As Rhodes approached the grinding operations, she followed the direction of Officer Boultenhouse and brought her car to a stop. Defendant, Carlo Zalewski, was operating a, 81,000 pound tractor-trailer rig eastbound Route 109 during the course of his employment with Driver Logistics Services, (DLS). DLS was making a delivery for GAF Building Materials Corp. (GAF). Zalewski rear-ended Rhodes. She was forced off the road and into a tree. Rhodes retained counsel and is perusing claims against Zalewski, DLS, GAF Building Materials, and Penske Truck Leasing Corp. Plaintiffs include Rhodes' husband, Harold, and their teenage daughter, Rebecca. Zalewski and DLS have asserted a 3rd party complaint against the named insured and Town of Medway for contribution, alleging Rhode's injuries or damages were caused wholly or in party by the actions of the insured, in that, the insured had a duty to provide markers, warning signs and traffic control devices and failed this duty.

We participated in mediation on 8/11/04 with $500,000 settlement authority. One Beacon also participated. The claims against our named insured settled for $550,000. We paid $275,000 and OneBeacon paid $275,000. The case proceeded to trial. Plaintiffs were awarded $9,500,000

## COVERAGE

Claims Made: ☐    Occurrence: x    Retro Date:

Specialty National Insurance Company provides general liability coverage to Jerry McMillan Professional Tree Service for policy period 9/21/01 – 9/21/02. The policy limit is $1,000,000 general aggregate limit and a $1,000,000 each occurrence limit. The related auto carrier is OneBeacon. There is no excess coverage available to this insured. The excess letter was sent to the insured on 2/25/04. This loss occurred within the policy period and territory. The allegations directed at the named insured are with regard to placement of signage, not the location of the insured parked vehicle. There is a coverage question. We argue this is an auto loss while OneBeacon argues this is a general liability loss. This coverage question will be resolved in a subsequent declaratory action..

The carrier for GAF is Zurich. Their policy limit is $2,000,000. Zurich is defending Zalewski, DLS, GAF and Penske. Separate counsel has been retained for each of these defendants. We do not yet understand why Zurich has taken a primary position for Zalewski, DLS Penske or who the DLS and Penske carriers are. Zurich has offered their $2,000,000 policy limit directly to plaintiffs. This offer has been rejected. GAF's excess carrier is AIG. Their policy limit is $50,000,000 in excess of Zurich's $2,000,000 primary policy limit. Defense counsel thinks AIG will participate is mediation and contribute toward settlement only after the Jerry McMillan policy limits have been offered.

## LIABILITY ISSUES AND EVALUATIONS

Location of Loss (County, State): Norfolk County, Ma.

Massachusetts is modified comparative negligence jurisdiction. 50% comparative negligence is a complete bar. Massachusetts recognizes Joint & Several liability apportionment, as outlined in Massachusetts General law (MGL 231B). Joint & several liability is apportioned on a pro rata/equal distribution amongst the defendants. In this regard, a joint tortfeasor is liable on a pro rata basis even if the assigned percentage of comparative negligence is a low as 1%. There are currently four viable defendants. Therefore, the Joint & Several proration is 25%, each. In determining the pro rata shares of tortfeasors; (a) their relative degree of fault shall not be considered, (b) if equity requires, the collective liability of some as a group shall constitute a single share; and (c) principles of equity applicable to contribution generally shall apply.

Liability on the part of Zalewski/DLS is clear. Zalewski admits he diverted his eyes from the roadway. He reports his attention diverted by a vehicle that had pulled out in front of him, from northbound Trotter Drive to westbound Route 109. He watched that vehicle as it was too close to Zalewski's tractor-trailer and he thought that vehicle was going to strike his left side mirror. When Zalewski turned his attention forward, he was too close to Rhodes and unable to stop in time to avoid the collision. Further, the subsequent investigation found that he had over 800 feet of unobstructed and clear view of the insured's equipment, Officer Boultenhouse and Rhodes stopped auto from a point where he crested a hill to the west of the site to point of impact. Zalewski's marks did not begin until after impact.

Liability on the part of GAF:
While it appears Zalewski was an employee of DLS, it appears GAF dictated many of the terms of employment, including delivery destinations and routes and could be fount to have an element of control over Zalewski. DLS did not own or lease the involved tractor-trailer. Defense counsel is of the opinion GAF will be found Jointly & Severally liable and further suggests GAF only has a 25-30% chance of getting out on defense verdict.

The Township of Medway has been dismissed based on municipal immunity statutes. Had they not been dismissed, MGL 258 generally provides for damages caps of $100,000 per person. In this case, it would be argued The Township's maximum exposure would have been capped at $300,000.

---

It is clear; the other defendants have the majority of this exposure. However, we must anticipate their arguments against the insured as a way to insure the insured's involvement and a Joint finding of liability. So far, GAF's expert, former State Trooper Gerald Murphy, now accident reconstructionist, will testify the insured failed to adhere to the standard of care expected under like facts and circumstances, in violation of Manual on Uniform Traffic Control Devices (MUTCD). Under MUTCD, the insured was performing "mobile" work. Therefore, "warning signs, flashing vehicle lights, flags and/or channeling devices should be used". Further, "where feasible, warning signs should be placed along the roadway and moved periodically as the work progresses".

The level of warning devices required is dependant upon where in the roadway the work is taking place (outside the shoulder edge, on or near the shoulder, on the median of a divided highway, or on the traveled way). It appears clear in this case that the work was being done a few feet off the roadway, a portion of the insured's vehicle was over to the left of the fog line and that a portion of the roadway was closed. MUTCD provides that when the "shoulder is occupied or closed, the driver should be advised and the workers should be protected. In some instances, this may require the use of portable barriers if the work is directly adjacent to the travel lane". It further provides that, as in this case, "where any part of the roadway is obstructed or closed, advanced warning signs are required to alert traffic well in advance of these obstructions or restrictions".

## DAMAGES

Marcia Rhodes was 48 years old at the time of occurrence. She sustained a "burst" fracture at T-12, closed head injury, subarachnoid hemorrhage, cerebral hematoma, numerous bilateral rib fractures, a left pneumothorax and numerous bruises and contusions. As a consequence of the T-12 "burst" fracture, there was a complete severing of the spinal cord and complete sensory and motor paralysis below T-12. She underwent spinal fusion surgery on January 16, 2002. As a consequence of the paralysis, all bowl and bladder functions have been permanently impaired and is catheter dependant. Given the inability to achieve catheter sanitation, there have been frequent urinary tract infections. There have also been bouts with pneumonia associated with the pneumothorax and rib fractures resulting in irreparable harm to the respiratory system, sacral decubitis ulcers (bed sores), diabetes, pancreatitus and deep vein thrombosis in the left leg. She was treated at the University of Massachusetts Medical Center and transferred to Fairlawn Rehabilitation Hospital on February 5, 2002. While there, she sustained multiple leg fractures while being transferred from her bed to a wheelchair. These fractures went undetected because of the inability to feel pain. She was discharged home on April 16, 2002. Her medical complications are ongoing. As a result of attempting to ambulate in a wheelchair, she has developed tendonitis and bursitis in her upper extremities. For the most part, Rhodes is bed ridden. To date plaintiff experts report and suggest;
- Medical specials are estimated in excess of $1,000,000.
- It will take approximately $250,000 to make the Rhodes' home handicap accessible.
- A handicap van will cost $50,000
- The Life Care Plan suggests future costs of $1,600,000 to $2,300,000
- Future episodic costs are estimated at $515,000 - $650,000
- Loss of household services is estimated at $300,000
- Claimed out-of-pocket expenses are $84,000

Claimed special damages are in the range of $3,869,000 to $4,634,000.
Further, Plaintiff's expert suggests a 30% reduction in life expectancy (a 10.3 year reduction) over a non-paraplegic). The consortium claims of Mr. Rhodes and the daughter will also be significant. The current total and combined demand for settlement of all claims is $19,500,000. There have been no offers made, beyond Zurich's $2,000,000. This offer received no response.

Jury verdicts of similar cases;
- $4,500,000 – Suffolk Superior Court, 8/1/02. 37 year old single mother suffered T9-10 paraplegia as a result of a motor vehicle accident. Medical specials were $2,100,000.
- $3,630,000 – Worcester Superior Court, 10/25/02. 25 year old suffered T7 paraplegia and closed head injury secondary to a motor vehicle accident after being served alcohol by defendant establishment. Plaintiff drove off the road, striking a tree.
- $3,900,000 – Settlement, November, 2003. Plaintiff suffered C5 paraplegia when he entered an unsafe road-side construction site. Plaintiff alleged that there were inadequate warnings of lane changes ahead at the road construction site. The general contractor failed to comply with safety standards relating to the installation, placement an monitoring of safety precautions to warn approaching motorists.
- $3,650,000 – Settlement, September, 2002. Plaintiff suffered T12 paraplegia as a result of an unsafe construction site when he fell from scaffolding
- $2,000,000 – Settlement, December, 2000. 40 year old plaintiff suffered paraplegia at an allegedly unsafe construction site when he fell through and unguarded hole. Plaintiff's BAC was .06 and had traces of marijuana in his blood.
- $3,750,000 - Settlement, August, 1998. 52 year old plaintiff suffered paraplegia as a result of an allegedly unsafe construction site when he fell through a sheetrock covered hole.

- $7,700,000 – Suffolk Superior Court 5/10/04. 90 year old male pedestrian suffered a leg amputation below the knee, cervical fracture and rotator cuff tear when he was struck by backing tractor-trailer rig. Medical specials were $373,000. There were comparative negligence arguments.

We feel the full value of this claim, to include the consortium claims is up to $5,000,000. This analysis includes prevailing jury verdicts and assumes the past and future special damages, as outlined above, are accurate. Defense counsel suggests a verdict could be well in excess of $10,000,000. While there is a pro rata apportionment that will result in a $1,250,000 to $2,500,000 finding against the insured (based on a $5,000,000 to $10,000,000 verdict award), the pre-mediation or pre-trial settlement value could be somewhat compromised as Plaintiffs may be motivated to compromise a settlement with the insured as a way to gather funds to cover the expenses of the

pending trial and put some immediate cash in the hands of the Plaintiffs'. There is no risk to Plaintiffs for taking the insured through trial only to find no negligence or causation is proven against the insured as the only thing that will change is pro rata apportionment. It will change from 25% to 33.3% and the remaining defendants are backed by a $50,000,000 excess policy of insurance. If we do not settle prior to trial and pro rata apportionment of the verdict to the insured is in excess of the insured's $1,000,000 policy limit we anticipate the insured will assign rights to Plaintiffs to proceed back against Specialty National, extra contractually. Therefore, we recommend proceeding forward with pre-mediation and/or mediation settlement authority of $800,000 and request settlement authority in this amount. If settlement is not accomplished at or below the $800,000 level prior to, or at mediation, serious consideration must be given to a pre-trial policy limits offer as a way to terminate the potential for excess exposure to the insured and the potential for extra contractual litigation.

## LITIGATION

Suit was filed in the Superior Court Department of the Trial Court for the Commonwealth of Massachusetts, Norfolk County, on 7/12/02. The firm of Brown, Rudnick Berlack and Israels of Boston is representing the plaintiffs. Defense counsel is Steven Duggen of Lynch & Lynch of South Easton. Mediation took place on 8/11/04. Trial took place on 9/2/04.

## RESERVE CHANGE AND/OR SETTLEMENT NARRATIVE

| Recommended reserves and/or settlement on claim | | | | | | | |
|---|---|---|---|---|---|---|---|
| Claimant #: | Claimant Name: | LRC | Current Open-Res | Paid | Incurred | Recommended Open-Res | Suggested Settlement |
| 001 | Rhodes, et al. | BODI | 500,000 | 275,000 | 275,000 | 275,000 | |
| 001 | Rhodes, et al. | ALAE | 54,600 | 40,471 | 54,600 | 75,000 | |
| 002 | Rhodes, et al. | PROP | 2,000 | 0 | 2,000 | 2,000 | |

## PLAN OF ACTION

Monitor coverage file for recovery from OneBeacon, as it relates to the pending declaratory action – coverage question.

## ENCLOSURES

Authorized by: _____  Date: _____

Case 1:04-cv-12306-RCL    Document 13-15    Filed 01/11/2006    Page 7 of 16

Peter G. Hermes

**From:** ECFnotice@mad.uscourts.gov
**Sent:** Tuesday, November 22, 2005 10:32 AM
**To:** CourtCopy@mad.uscourts.gov
**Subject:** Activity in Case 1:04-cv-12306-RCL Specialty National Insurance Company v. One Beacon Insurance Company "Procedural Order re pretrial/trial"

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

## United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Hourihan, Lisa entered on 11/22/2005 at 10:31 AM EST and filed on 11/22/2005

**Case Name:** Specialty National Insurance Company v. One Beacon Insurance Company
**Case Number:** 1:04-cv-12306
**Filer:**
**Document Number:** 12

**Docket Text:**
Judge Reginald C. Lindsay : ORDER entered. PROCEDURAL ORDER re pretrial/trial Final Pretrial Conference set for 3/2/2006 03:00 PM in Courtroom 11 before Judge Reginald C. Lindsay.(Hourihan, Lisa)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=11/22/2005] [FileNumber=1210937-0] [64c7e331de33b2a15fd7506583641823c015b24a6ee35b0912c40783d3cbcd5aa9 bcdd260a22476d5d85417e3d3da83d888f88097d4ddc25b8557c23f9ed4c2c]]

**1:04-cv-12306 Notice will be electronically mailed to:**

Peter G. Hermes    phermes@hnso.org

Robert P. Powers    rpowers@melicklaw.com

11/22/2005

**1:04-cv-12306 Notice will not be electronically mailed to:**

11/22/2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


**SPECIALTY NATIONAL INS. CO.**
        Plaintiff

v.                      C.A. No. **04-12306-RCL**

**ONE BEACON INS. CO.**
        Defendant


ORDER FOR FINAL PRE-TRIAL CONFERENCE

The above-entitled action is scheduled for a final pretrial conference on **March 2, 2006**, at **3:00PM** in Courtroom #11, 5th floor, U.S. District Court, Boston, Massachusetts. Counsel shall be prepared to commence trial of this action on or after **(to be determined at the pretrial conference)**. Unless excused by the Court, each party shall be represented at the pretrial conference by counsel who will conduct the trial.

Counsel for all parties shall meet prior to the final pretrial conference to:

(1) explore the possibility of settlement of this action;

(2) draft and sign a stipulation as to all uncontested facts;

(3) narrow the issues to be tried;

(4) exhibit to all parties any and all photographs, documents, instruments and other objects any party intends

to offer as exhibits at trial;

(5) give notice to all parties of the names and addresses of witnesses a party intends to call at trial, including the names and qualifications of any expert witnesses;

(6) in jury cases, discuss proposed jury instructions.

(7) Counsel shall prepare and file, either jointly or separately, a pretrial memorandum which shall set forth the following information.

(a) The names, addresses and telephone numbers of trial counsel.

(b) A concise summary of the positions asserted by the plaintiff(s), defendant(s) and any other parties with respect to both liability and relief sought.

(c) Whether any claims or defenses have been or will be waived or otherwise not pursued at trial.

(d) A statement of the facts established by the pleadings, stipulations of counsel and admissions. <u>Counsel shall stipulate all facts not in genuine dispute.</u>

(e) Contested issues of fact.

(f) Any jurisdictional questions.

(g) Any questions raised by pending motions.

(h) Issues of law, including evidentiary questions, together with supporting authority. (Any party wishing to present a matter to the court by way of a motion in limine shall

2

file such motion as a separate document at the time of the filing of the pretrial memorandum.)

(i)   Any requested amendments to the pleadings.

(j)   Any additional matters to aid in the disposition of the action.

(k)   The probable length of trial (court's customary trial day is from 9:00AM to 1:00PM with a break of about 25 minutes at 11:00AM).

(l)   A list of the names and addresses of witnesses who will testify at trial and the purpose of the testimony of each witness, i.e., whether factual, medical, or other expert, etc. Unless the qualifications of any medical or other expert are admitted, a brief statement of the qualifications of such witness shall be included.

(m)   A list of the proposed exhibits each party will offer in that party's affirmative case. Those exhibits to be introduced without objection shall be identified by a single sequence of numbers, regardless of which party is the proponent of a given exhibit. Those exhibits to which any party objects shall be identified by a single sequence of capital letters followed by some form of identification of the objecting party (e.g., "Plaintiff Jones objects; Defendant Smith objects").

(n)   In jury cases, an appendix containing proposed jury instructions. In non-jury cases, an appendix containing proposed

3

findings of fact and rulings of law. Each proposed jury instruction or conclusion of law shall include citations to supporting authority.

(o) In jury cases, any questions proposed for the <u>voir dire</u> examination of the jury panel and any proposed interrogatories to the jury or special verdict form.

**Unless otherwise provided in this paragraph, the pretrial memorandum, with appendices, shall be filed, in triplicate, not later than five business days before the scheduled date of the final pretrial conference.**

**If any document required to be filed by this section 7 is filed electronically, the filing party need only file one original of that document five business days before the scheduled date of the final pretrial conference.**

(8) At the time of the filing of the pretrial memorandum, each party shall file a separate paper, for the benefit of the court reporter, setting forth any unusual or difficult terms or names that may be referred to at trial.

Immediately upon receipt of this Order, any counsel who realizes that one or more attorneys of record have not been notified shall forthwith notify the additional attorney(s) in writing as to entry of this Order and shall file a copy of the writing with the clerk.

4

In the event that some disposition of this case has heretofore been made, or is made before the pretrial conference, counsel shall, by telephone, forthwith notify the Deputy Clerk signing this order and promptly thereafter submit closing papers. Compliance with this order is not excused absent the filing of closing papers or the entry of a Settlement Order of Dismissal in a form prescribed by the Court.

**Failure to comply with any of the directions set forth in this Order may result in judgment of dismissal or default or the imposition of other sanctions deemed appropriate by the Court.**

By Order of the Court

Lindsay, D.J.

By /s/ Lisa M. Hourihan
    Deputy Clerk

November 22, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STANDING ORDER RE: ELECTRONIC CASE FILING
IN CASES BEFORE REGINALD C. LINDSAY, U.S.D.J.

After October 1, 2003, documents filed in all cases in my session may be filed electronically, so long as the filing party complies with the applicable Federal Rules of Criminal Procedure or Civil Procedure (as the case may be), the Local Rules of United States District Court for the District of Massachusetts and the rules and procedures outlined in the Electronic Case Filing Administrative Procedures Pamphlet and the Electronic Case Filing ("ECF") User's Manual. Even if electronic filing is used, however, unless otherwise ordered, the filing party must also deliver to the clerk's office, by mail or otherwise, a paper, courtesy copy of any electronic document constituting, supporting or opposing a dispositive motion, discovery motion or a proceeding for the construction of claims in a patent case.* The courtesy copy of each such document must be stamped or otherwise

---

\* For purposes of this order, the term "dispositive motion" includes a motion to dismiss, a motion for summary judgment, a motion to suppress, a motion for preliminary relief (including a motion for an attachment of real or personal property) and a motion for the entry of judgment. The term "discovery motion" includes any motion in which the moving party seeks an order requiring that a person or entity provide information in any form to the moving party.

6

prominently marked as follows: "Courtesy copy - - DO NOT SCAN, Original Filed Electronically," and must be delivered to the clerk's office within three business days of the electronic filing.

In any case of an electronic filing in which a party seeks leave of court to file a document or to amend a document previously filed, the party must attach electronically to the motion seeking leave a copy of the document which the party proposes to file. That document must be marked "Proposed [document designation]." If leave to file the document is granted, the party proposing the document must then file the original of that document (which may be done electronically), indicating in the caption of the document that leave has been granted.

SO ORDERED.

DATED: September 12, 2003

/s/ REGINALD C. LINDSAY

United States District Judge