## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **SPECIALTY NATIONAL INSURANCE COMPANY,** | ) ) ) |
| **Plaintiff,** | ) ) ) |
| **v.** | ) |
| **ONEBEACON INSURANCE COMPANY,** | ) ) ) |
| **Defendant.** | ) ) ) |

**Civil Action No. 04-12306 RCL**

## ONEBEACON INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, OneBeacon America Insurance Company ("OneBeacon")

moves this Honorable Court to enter Summary Judgment in its favor and against the Plaintiff,

Specialty National Insurance Company ("Specialty National").[1]  OneBeacon moves this Court to

enter Summary Judgment with respect to Counts I (Equitable Subrogation) and II (Declaratory

Judgment) against Specialty National as asserted in the Complaint and in favor of OneBeacon on

its Counterclaim for equitable subrogation.  OneBeacon states that there are no genuine issues of

material fact and that it is entitled to summary judgment as a matter or law.

### INTRODUCTION

Specialty National Insurance Company ("Specialty National") brought this action for,

*inter alia*, equitable subrogation and declaratory relief against OneBeacon Insurance Company

("OneBeacon") to recover its share of monies paid toward a jointly funded settlement reached in

---

[1] At all relevant times, Commercial Union Insurance Company, now known as OneBeacon America Insurance Company, had in effect a Commercial Automobile Insurance Policy which provided certain coverages to Jerry McMillan Professional Tree Service, Inc.  OneBeacon originally denied Plaintiff's allegations as to OneBeacon Insurance Company in its Answer filed January 12, 2005. See Answer, ¶12.  As such, Plaintiff continues to assert claims against an improperly named defendant.

the civil action entitled Marcia Rhodes, et al v. Carlo Zalewski, Driver Logistics, Penske Truck Leasing Corp., and GAF Building Materials Corp., C.A. No.: 02-01159A ("Underlying Action"). Specialty National seeks a judgment that OneBeacon was primarily obligated under a business auto liability insurance policy which it issued to Jerry McMillan Professional Tree Service, Inc. ("McMillan"). OneBeacon brought a Counterclaim against Specialty National seeking equitable subrogation as Specialty National was primarily obligated to defend and indemnify McMillan pursuant to a general liability insurance policy.

## UNDISPUTED MATERIAL FACTS

### A.    The Accident, The Suit and The Settlement

This case arises from an accident that occurred on January 9, 2002. On that date Marcia Rhodes ("Rhodes") was seriously injured when a tractor-trailer driven by Carlo Zalewski rear-ended her stopped vehicle on Route 109 in Medway, Massachusetts. Complaint, ¶5; Answer and Counterclaim, ¶5. Rhodes had stopped her car at the direction of the Medway police officer who was directing traffic at a location where roadside tree removal work was being conducted by McMillan. Complaint, ¶6; Answer and Counterclaim, ¶6. At the time of the accident, an employee of McMillan was grinding a tree stump using a stump grinder attached to a pickup truck. Complaint, ¶7; Answer and Counterclaim, ¶7.

On or about February 21, 2002, McMillan was put on notice by GAF Building Materials that a lawsuit would likely be filed and that McMillan would likely be brought in as a defendant. A copy of the February 21, 2002, letter is attached as Exhibit "A".[2] McMillan thereafter notified its insurance agent of the February 21, 2002, letter. On March 13, 2002, Network Adjusters, Inc., the third party claims administrator for Specialty National, took over the handling of the

---

[2] All Exhibits referenced herein are attached as exhibits to the Motion for Summary Judgment.

2

Rhodes claim. The letter contains no reservation of rights. A copy of the March 13, 2002, letter is attached as Exhibit "B".

On or about July 12, 2003, Rhodes and others filed a Complaint in the Norfolk Superior Court, entitled <u>Marcia Rhodes, et al v. Carlo Zalewski, Driver Logistics, Penske Truck Leasing Corp., and GAF Building Materials Corp.</u>, C.A. No.: 02-01159A ("Underlying Action"), in which it was alleged that the defendants were negligent. Complaint, ¶8; Answer and Counterclaim, ¶8. On or about October 20, 2003, defendants Carlo Zalewski and Driver Logistics filed a Third Party Complaint against McMillan seeking contribution for failing to "provide any markers, warning signs and traffic control devices" which lead, in whole or in part, to the Rhodes' accident. A copy of the Third Party Complaint, ¶22, is attached as Exhibit "C". See also a copy of the Docket, Paper No. 26, attached as Exhibit "D".

McMillan, through its insurance company, notified its Insurer, Specialty National of the Third Party Complaint. Specialty National thereafter retained counsel for McMillan and undertook to provide its defense without a reservation of rights. Complaint, ¶14; Answer and Counterclaim, ¶14. On or about December 13, 2003, counsel retained by Specialty National, on behalf of McMillan filed its Answer. See Exhibit "D", Paper No. 31.

On or about June 15, 2004, McMillan's counsel notified OneBeacon, again without a reservation of rights, of the potential that allegations asserted <u>*may*</u> implicate McMillan's business auto policy with OneBeacon and requested that OneBeacon "participate in the defense of the same." A copy of the June 15, 2004, letter is attached as Exhibit "E". On or about June 25, 2004, Network Adjusters wrote to McMillan requesting that it notify OneBeacon of the Rhodes claim. A copy of the June 25, 2004, letter is attached as Exhibit "F". On or about July 12, 2004, Network Adjusters, notified OneBeacon for the first time that it believed OneBeacon's business

auto policy provided coverage for the third party claims. A copy of the July 12, 2004, letter is attached hereto as Exhibit "G".

On August 5, 2004, OneBeacon, without an admission on its part that it had an obligation to defend or to indemnify McMillan, agreed to participate in the defense of the third party claims and to pay one-half of the defense costs incurred from and after receipt of the June 25, 2004, letter. A copy of the August 5, 2004, letter is attached hereto as Exhibit "H". Still Network Adjusters did not object or assert a reservation of rights and Specialty National's retained counsel continued to defend McMillan. On or about August 11, 2004, Specialty National and OneBeacon, in addition to the other parties by and through their representatives and insurers, attended a scheduled mediation to explore the potential for settlement.

On or about August 17, 2004, Specialty National and OneBeacon funded a settlement of the third-party claims against McMillan by each of them contributing \$275,000, totaling \$550,000 in settlement to the Plaintiffs. At this same time, the parties entered into discussions between representatives of Specialty National and OneBeacon regarding certain reservations of rights and the reservation of the right to seek reimbursement, each from the other, however, Specialty National never executed a written document with respect to these potential reservations. Answer and Counterclaim, §17.

On or about August 20, 2004, McMillan filed an Emergency Motion for Entry of Separate and Final Judgment on behalf of McMillan. See Exhibit "D", Paper No. 62. On or about August 27, 2004, McMillan's Motion was allowed by J. Donovan. See Exhibit "D", Paper No. 70. On or about September 28, 2004, Judgment entered in favor of McMillan. See Exhibit "D", Paper No. 96.

4

## B.    The Declaratory Judgment Action and The Policies

On or about October 28, 2004, Specialty National filed its Complaint in this action

seeking Equitable Subrogation (Count I) and Declaratory Judgment (Count II) seeking

reimbursement of all sums paid for the defense of and indemnity on behalf of McMillan.

Complaint, ¶¶18-24. On or about January 12, 2005, OneBeacon filed an Answer and

Counterclaim asserting its claim for equitable subrogation. Since Specialty National's March 13,

2002 letter (Exhibit "B"), Specialty National undertook to defend and control the defense of

McMillan.

At all material times, McMillan was insured under a general liability policy of insurance

issued by Specialty National, Policy No. 3XZ138766-00 and a commercial automobile policy

issued by OneBeacon America Insurance Company ("OneBeacon")[3], Policy No. CBXA05979.

Complaint, ¶¶10, 12; Answer and Counterclaim, ¶¶10, 12; See also a copy of the OneBeacon

business automobile policy attached as Exhibit "I" and the Specialty National Commercial

General Liability Insurance Policy attached hereto as Exhibit "J".

OneBeacon's Commercial Automobile Insurance Policy provided coverage of:

> [A]ll sums an "insured" legally must pay as damages because of
> "bodily injury" or "property damage" to which this insurance
> applies, caused by an "accident" and resulting from the ownership,
> maintenance or use of a covered "auto."

See Exhibit "I", Form CA 00010797, §II(A). OneBeacon's Commercial Automobile Insurance

Policy further provides a subrogation clause which states, in relevant part:

> If any person or organization to or for whom we make payment
> under the Coverage Form has rights to recover damages from
> another, those rights are transferred to us.

See Exhibit "I", Form CA 00010797, §IV(A)(5).

---

[3] Formerly known as Commercial Union Insurance Company.

5

Specialty National's Commercial General Liability Insurance Policy provided coverage

of:

> [T]hose sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages.

See Exhibit "J", CG 00 01 07 98, § 1(a).

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), the Court should enter the judgment sought if the

parties' submissions show that "there is no genuine issue as to any material fact, and [where] the

moving party is entitled to judgment as a matter of law." Foster-Miller, Inc. v. Babcock &

Wilcox Canada, 975 F. Supp. 30, 33 (D. Mass. 1997), citing Fed. R. Civ. P. 56 (c); Gaskell v.

Harvard Co-op. Society, 3 F.3d 495, 497 (1st Cir. 1993). In this case, there are no genuine issues

as to any material facts and the Plaintiffs are entitled to judgment as a matter of law.

## ARGUMENT

I. SPECIALTY NATIONAL IS ESTOPPED FROM DENYING COVERAGE AND SEEKING SUBROGATION DUE TO ITS UNREASONABLE AND INEXCUSABLE DELAY IN ASSERTING AN EXCLUSION DEFENSE TO COVERAGE

A. Specialty National Assumed and Controlled McMillan's Defense for Twenty-Nine Months Before Raising A Coverage Issue

The Appeals Court recently held in accord with longstanding precedent that an insurer

was estopped from asserting an absence of coverage for indemnification of its insured as a result

of an unreasonable delay in asserting a denial of coverage. Safety Insurance Company v. Day, et

al., 65 Mass. App. Ct. 9, 16 (2005). The underlying facts were as follows. On or about July 17,

1997, the Plaintiff in the underlying action filed a personal injury action against the owner[4] and

---

[4] Ann B. Day had a policy of insurance with Safety Insurance Company for a vehicle that was not involved in the accident with the Plaintiff.

6

operator[5] of the motor vehicle which was involved in an accident with the Plaintiff. Id. at 17-18. The owner's insurance company, Trust Insurance Company ("Trust") undertook to defend both her and the operator, with Safety Insurance Company's ("Safety") consent, in the personal injury matter.[6] Id. Trust later settled on owner's behalf by paying the Plaintiff the full policy limits. Id. at 18.[7]

On September 28, 1998, Safety assumed the operator's defense against Plaintiff's claims against her. Id. Safety made no reservation of rights with respect to coverage. In early 1999, Safety investigated whether a coverage exclusion applied. Id. at 19. On June 9, 1999, Safety notified its insured, the operator, that it would seek a judgment declaring that it was not obligated to provide coverage. Id. Safety continued to represent its insured in the underlying tort action. Id. The insured filed for summary judgment arguing that Safety was estopped from asserting a coverage defense due to Safety's inexcusable delay of twenty-three months after the commencement of the personal injury action. Id.

The Appeals Court held, in part, that Safety's twenty-three month delay in asserting the absence of coverage estopped Safety from asserting a coverage defense. Id. at 23. Specifically, the Appeals Court reasoned that the insurer may not have both control of the defense and an unlimited right to disclaim liability. Id. at 24; See also, Salonen v. Paanenen, 320 Mass. 568, 572 (1947) (holding that under doctrine of estoppel or waiver, insurer who acquires information sufficient to warrant disclaimer of liability, cannot continue in defense of action against insured, and upon rendition of unfavorable result, assert that the insurer is not liable for such result). Moreover, the Appeals Court noted that Safety knew for approximately ten months of the

---

[5] Donna E. Enberg had a policy of insurance with Trust Insurance Company.

[6] Trust kept Safety informed with respect to the case. (Under the relevant part of Safety's policy, the owner's auto insurance must pay its limits before Safety pays).

[7] The Release did not release Plaintiff from further claims against the operator.

material facts necessary to determine coverage or the lack thereof but failed to undertake to do so until indications that the tort action would likely cost the full policy limits.  Id.

Here, Specialty National's twenty-nine month delay in raising a coverage issue precludes it from now asserting it.  Between March 13, 2002, and August 17, 2004, Specialty National assumed and controlled McMillan's defense of the Rhodes claims pursuant to the general liability policy of insurance issued by Specialty National, Policy No. 3XZ138766-00.  Specialty National undertook McMillan's defense without a Reservation of Rights.  See Exhibit "B".  After first being notified of the claim in March, 2002, Specialty National specifically sought a determination of coverage under its general liability policy.  A copy of Specialty National's claim notes are attached as Exhibit "K", p. 1, Action Plan.  Specialty National thereafter determined that its policy, and not OneBeacon's, extended coverage for the loss.  Specifically, as early as September 17, 2002, Specialty National determined that "based upon the information we have received, it appears that coverage under this [general liability] policy would extend to this loss."[8]  A copy of Specialty National's September 17, 2002, Major Loss Report is attached as Exhibit "L", p. 2.  Shortly thereafter, Specialty National noted that "this is not an auto exposure."  See Exhibit "K", p. 6, October 5, 2002 Note.

On or about October 20, 2003, defendants Carlo Zalewski and Driver Logistics filed a Third Party Complaint against McMillan seeking contribution for failing to "provide any markers, warning signs and traffic control devices" which lead, in whole or in part, to the Rhodes accident.  See Exhibit "C".  These allegations, coupled with Specialty National's previous coverage investigation leaves no doubt that Specialty National determined and accepted that the

---

[8] As noted in Exhibit "K", "The insured's truck has a trailer attached that contained the grinding machinery needed to perform the task.  Because of the size of the trailer, the insured unit extended into the eastbound lane of Route 9."

Rhodes claim was primarily covered under its general liability policy and not the policy issued by OneBeacon. See Exhibits "K", "L" and "M".

Moreover, as late as June 10, 2004, Specialty National continued to accept that the loss fell within its general liability policy, without exception, by stating:

> [t]he allegations directed at the named insured are with regard to placement of signage, not the location of the insured parked vehicle. Therefore, the 'arising out of an auto' exclusion does not apply.

A copy of Specialty National's June 10, 2004, Major Loss Report is attached as Exhibit "M", p. 2. In fact, Specialty National requested and recommended pre-trial settlement authority for a direct settlement with the Plaintiffs of $800,000 and reserve authority of $1,000,000. See Exhibit "M", p. 1. These facts demonstrate Specialty National's acceptance, without reservation, that the claim fell within the general liability policy.

Notwithstanding, approximately twenty-nine months after accepting the loss as within its general liability policy, and approximately three months prior to trial, Specialty National, for the first time, notified OneBeacon and McMillan that it believed coverage *may* be outside its general liability policy. See Exhibit "G". Specialty National did not and has not alleged that it learned of any new material facts which were unavailable in March, 2002, or June, 2004. Only after the settlement was reached with Rhodes did Specialty National attempt to reserve its rights as to coverage. This was approximately thirty-two months after taking full control of McMillan's defense. Such a result is precisely what is prohibited by the Salonen decision. Salonen, *supra*.

Specialty National's attempt to recoup monies paid out in settlement by raising a coverage issue which could have and should have been raised more than two and one-half years earlier is barred by the doctrine of estoppel.

9

B.    OneBeacon, Through Its Contractual Right of Subrogation with McMillan, Is
      Entitled to Recover Its Share of the Monies Paid Toward the Settlement with
      Marcia Rhodes

The standard for an estoppel is that a party says or does something intended to induce

conduct on the part of another; that the other person reasonably relies on the representation; and

therefore acts or refrains from acting; and that the other person incurs a detriment as a result.

Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 123 (1992). The factors work

somewhat differently in an insurance context, because the insurance contract gives the insurer

the right to control the defense, at least to the extent of the risk it has assumed under the policy.

See Safety Insurance, 65 Mass. App. Ct. at 23.

As previously stated, "the insurer may not have both control of the defense and an

unlimited right to disclaim liability." Id. at 24. Where, as here, Specialty National assumed the

defense under the general liability policy and acquired information which it contends was

sufficient to warrant a disclaimer of liability coverage with respect to the Third Party Complaint

against McMillan, it could not continue to control the defense against the insured, and upon

rendition of unfavorable result, assert that it is not liable for such result. See Salonen, 320 Mass.

at 572. The reason for estoppel or waiver in this context, is that, having induced reliance on its

protection under the policy when a party might have protected itself, an insurer, in fairness,

thereafter cannot withdraw that protection. Id.

Specialty National, in defending McMillan for approximately two and one-half years

without a reservation of rights, effectively lulled McMillan into a false sense of security that

Specialty National accepted that the general liability policy covered the Rhodes claim.

Moreover, had Specialty National given timely notice that it disputed coverage, McMillan may

have taken part in the defense to ensure that his interests were not compromised. A reservation

10

of rights in these circumstances would have notified McMillan that the defense was subject to the later right to disclaim liability. See Three Sons, Inc. v. Phoenix Ins. Co., 357 Mass. 271, 276 (1970). Learning for the first time on or about July 12, 2004, that Specialty National sought to disclaim coverage, McMillan (or derivatively OneBeacon) could hardly be expected to assume the burden of defense less than two months prior to trial. See Exhibit "I".

Specialty National placed McMillan in a position in which he had little choice but to rely on Specialty National's defense of the Rhodes claim. As a result of Specialty National's late-inning attempt to deny coverage, OneBeacon, on behalf of McMillan, was required to contribute $275,000 towards the $550,000 settlement with Rhodes in order to effect a settlement advantageous to McMillan.

Pursuant to OneBeacon's Commercial Automobile Insurance Policy:

> If any person or organization to or for whom we make payment
> under the Coverage Form has rights to recover damages from
> another, those rights are transferred to us.

See Exhibit "I", Form CA 00010797, §IV(A)(5).

Special National, being estopped from denying coverage, is liable to OneBeacon, by and through operation of the subrogation provision of it policy to stand in the shoes of McMillan, in the amount of $275,000 representing OneBeacon's share of the monies contributed to the Rhodes' settlement.

## II.   THE ACCIDENT DID NOT "RESULT FROM" THE "OWNERSHIP, MAINTENANCE OR USE OF A COVERED AUTO" SO AS TO IMPOSE COVERAGE UNDER THE ONEBEACON COMMERCIAL AUTO POLICY

In determining whether a liability insurer owes a duty to defend, the fact-finder must match the third-party's complaint against the policy provisions. Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146 (1984). The interpretation of an insurance contract and the

11

application of an insurance policy to known facts present questions of law for the judge to

decide.  Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003).  A cursory

review of the Third Party Complaint establishes that Carlo Zalewski's and Driver Logistics'

claims were outside of the scope of coverage of OneBeacon's Commercial Auto Policy.

According to the Third Party Complaint filed in the Underlying Action, the theory of

liability as against McMillan was the result of McMillan's failure to provide any warnings, signs,

or traffic control devices, in violation of 454 C.M.R. 10.  Specifically, the Third Party Complaint

states, in relevant part:

> 12.  There were no warnings, signs, or traffic control devices being used at the time of
> the accident, in violation of 454 C.M.R. 10 referencing the Manual on Uniform
> Traffic Control Devices for Streets and Highways (MUTCD), and specifically,
> 454 C.M.R. 10.02(3)[9] and 10.47[10], which require use of signage and other
> warnings at all times in such work areas.
>
> 13.  On January 9, 2002, it was the responsibility of MacMillan [sic] to place warning
> signs at the worksite on Route 109.
>
> 14.  MacMillan [sic] failed to place any warning signs or temporary traffic control
> signs at the worksite on Route 109 on January 9, 2002.
>
> 21.  Jerry MacMillan Professional Tree Service, Inc. had a duty to provide markers,
> warning signs, and traffic control devices on the worksite adjacent to Route 109.
>
> 22.  On January 9, 2002, Jerry MacMillan [sic] Professional Tree Service, Inc., failed
> to provide any markers, warning signs, and traffic control devices.

---

[9] C.M.R. 10.02 entitled Authority, Purpose and Scope states, in relevant part, that its requirements are "applicable to
all activities related to the erection, construction, alteration, demolition, repair or maintenance of buildings,
structures, bridges, highways, roadways, dams, tunnels, sewers, underground building or structures, underground
pipelines or ducts and all other construction projects or facilities.
[10] C.M.R. 10.47 entitled Accident Prevention Signs and Tags states, in relevant part, that: (1) General. Signs and
symbols ... shall be visible at all times when work is being performed, and shall be removed or covered promptly
when the hazards no longer exist; (2) Danger Signs. Danger signs shall be used only where an immediate hazard
exists; (3) Caution Signs. Caution signs shall be used only to warn against potential hazards or to caution against
unsafe practices; (7) Traffic Signs. Construction areas shall be posted with legible traffic signs at points of hazard.

See Exhibit "C". Absent in the Third Party Complaint is any allegation or contention that
McMillan's use of the stump grinding machine or of his vehicle somehow caused the accident
which injured Rhodes.

Specialty National is now attempting to impose coverage under the OneBeacon policy
and exclude coverage under its general liability policy by attempting to contend, albeit generally,
that the accident arose out of the ownership and use of a covered motor vehicle. Specialty
National's contentions are misplaced. Moreover, Specialty National's most current position is in
direct contradiction to its initial determination of the same issue shortly after the accident and for
the subsequent twenty-nine months. As noted above, Specialty National previously determined
that its policy, and not OneBeacon's, extended coverage for the loss. Specifically, as early as
September 17, 2002, Specialty National determined that "based upon the information we have
received, it appears that coverage under this [general liability] policy would extend to this loss."
Specialty National's determination was made with knowledge that McMillan's truck had a trailer
attached that contained the stump grinder and that the automobile extended into the eastbound
lane of Route 9. See Exhibit "L".

In addition, Specialty National noted that "this is not an auto exposure." See Exhibit
"K", p. 6, October 5, 2002 Note. As late as June 10, 2004, Specialty National continued to
accept that the loss fell within its general liability policy, without exception, by stating:

> [t]he allegations directed at the named insured are with regard to
> placement of signage, not the location of the insured parked
> vehicle. Therefore, the 'arising out of an auto' exclusion does not
> apply.

See Exhibit "M", p. 2. Finally, approximately one month after the settlement was reached,
Specialty National conceded that the "allegations directed at the named insured are with regard

13

to placement of signage, not the location of the insured parked vehicle." A copy of Specialty

National's September 16, 2004, Major Loss Report is attached as Exhibit "N", p. 2.

Notwithstanding these determinations, Specialty National now, more than twenty-nine

months after taking over and controlling the defense in this matter and after a settlement was

reached in the Underlying Action, seeks to deny coverage and recoup its monies paid by alleging

that the Underlying Action was the result of the "ownership, maintenance or use" of a covered

auto. Case law, however, supports Specialty National's initial determination that the Underlying

Action did not arise out of the ownership, maintenance or use of a covered auto.

OneBeacon's Commercial Automobile Insurance Policy provided coverage of:

> [A]ll sums an "insured" legally must pay as damages because of
> "bodily injury" or "property damage" to which this insurance
> applies, caused by an "accident" and resulting from the ownership,
> maintenance or use of a covered "auto".

See Exhibit "E", Form CA 00010797, §2(A).

The expression "arising out of" however, "does not refer to all circumstances in which

the injury would not have occurred 'but for' the involvement of a motor vehicle." Rischitelli v.

Safety Ins. Co., 423 Mass. 703, 704 (1996). Whether a particular injury is sufficiently related to

an automobile's use must be decided on a case-by-case basis and requires "a judgment call ... as

to where along a continuum of causation fall the facts of each case." Ruggerio Ambulance Serv.,

Inc. v. National Grange Mut. Inc. Co., 430 Mass. 794, 797 (2000). Where the motor vehicle's

presence is too attenuated to the injuries sustained, the motor vehicle policy has no obligation to

provide coverage. See Tae v. Tae, 57 Mass. App. Ct. 297, 299-300 (2003) (injury to named

insured's children from house fire caused by insured after he drained gasoline from car, entered

dwelling, poured in over himself, and ignited it, were too independent of any operation of the

motor vehicle to be considered causally connected to such use); Rischitelli, 423 Mass. at 703,

14

707 (injury to a plaintiff when the driver of the other vehicle left that vehicle and physically attacked the plaintiff, was sufficiently independent of the motor vehicle accident that the losses did not "arise out of" the use of an automobile); White v. American Cas. Ins. Co., 53 Mass. App. Ct. 66, 68 (2001) (plaintiff in car sounded horn and bitten by a dog entitled to PIP benefits as injury arose out of use of vehicle); Perry v. Chipouras, 319 Mass. 473, 474-475 (1946) (pedestrian injured after tripping on rope which insured truck owner negligently dropped on sidewalk from box unloaded from truck was not entitled to recover from motor vehicle insurance policy providing coverage against loss "arising out of ownership, operation, maintenance, control or use" of motor vehicle); Sabatinelli v. Travelers Ins. Co., 369 Mass. 674, 676-677 (1976) (plaintiff's injuries did not "arise out of" use of car where plaintiff was shot by insured person sitting in car with engine running); Liberty Mutual Ins. Co. v. Agrippino, 375 Mass. 108, 109-110 (1978) (finding that the Complaint alleged negligence *only* in the furnishing of inadequate equipment such that the use of the trailer could not be said to be connected with the causing of the accident). In each of these cases, a motor vehicle was involved, however, the motor vehicles involvement was not sufficiently related to the cause of the injuries.

Here, as in Liberty Mutual Ins. Co. v. Agrippino, the Third Party Complaint against McMillan simply alleges that McMillan was negligent with respect to its failure to provide any markers, warning signs, and traffic control devices. As is Liberty Mutual Ins. Co. v. Agrippino, no allegations were made that McMillan's "ownership, maintenance or use of a covered auto" was in any way negligent or causally related to Rhodes' injuries. Rhodes' injuries are independent of McMillan's ownership or use of the stump grinder and thus, did not "result" therefrom. Rather, it was McMillan's negligence in failing to comply with applicable statutes and regulations requiring danger, caution and traffic signs to be provided and visible at a jobsite

15

that was, in part, causally related to the accident. To adopt Specialty National's contention that OneBeacon's auto policy was primarily obligated to provide coverage for Rhodes' injuries would be equivalent to converting the OneBeacon auto policy into a general liability policy, contrary to the express language of the policy itself.

For the reasons cited in Liberty Mutual Ins. Co., 375 Mass. 108, and the other cases referenced above, Specialty National's general liability was obligated to provide coverage in the Underlying Action. Moreover, OneBeacon has established that its auto policy did not provide coverage in the Underlying Action. Therefore, Specialty National's subrogation and declaratory judgment claims should be denied and OneBeacon's claim for equitable subrogation should be allowed.

III.    IF THIS COURT DETERMINES THE RHODES' ACCIDENT RESULTED FROM THE "OWNERSHIP, MAINTENANCE OR USE OF A COVERED AUTO" THEN SPECIALTY NATIONAL'S PAYMENT TOWARD THE SETTLEMENT WAS VOLUNTARY AND THEREFORE NOT SUBJECT TO SUBROGATION RIGHTS

Subrogation is an equitable adjustment of rights that operates when a creditor or victim of loss is entitled to recover from two sources, one of which bears a primary legal responsibility. Safety Insur. Co. v. Mass. Bay Transportation Auth., 58 Mass. App. Ct. 99 (2003). If the secondary source pays the obligation, it succeeds to the rights of the creditor or loss victim to recover payment from the primary source. Frost v. Porter Leasing Corp., 386 Mass. 425, 426-427 (1982). An insurer who pays the insured when it clearly had no obligation to do so, is deemed to have volunteered the payment and has no right of subrogation. Allstate Insur. Co. v. Quinn Construction Co., 713 F. Supp. 35, 37-38 (D. Mass. 1989). Whether a payment was voluntary hinges on whether the policy clearly obligates the insurance company to pay – not whether the decision to pay is motivated by self-protection. See Encompass Insurance Company v. Great Northern Insurance Co., No. CIV.A.04-12131-RWZ, 2005 WL 2065328, at *1 (D.

16

Mass. Aug. 25, 2005), citing Sullivan v. Young Brothers & Co., 91 F.3d 242, 252 n.5 (1st Cir. 1996).

Five requirements must be met in order for court to allow equitable subrogation under Massachusetts law: (1) party seeking subrogation must have made payment to protect his or her own interest; (2) this party must not have acted as volunteer; (3) party seeking subrogation must not have been primarily liable for debt; (4) party must have paid off entire debt; and (5) subrogation must not work injustice to rights of others. East Boston Sav. Bank v. Ogan, 428 Mass. 327, 330 (1998). For reasons set forth more fully below, Specialty National cannot establish that it did not voluntarily extend monies toward the settlement in the Underlying Action or was not primarily liable for the debt. [11]

Assuming *arguendo*, that this Court determines that the Rhodes' accident resulted from the "ownership, maintenance or use of a covered auto"[12] then Specialty National's payment of $275,000 towards the settlement in the Underlying Action was voluntary. In this case, Specialty National disclaims any obligation under the terms of its general liability policy to pay the $275,000 towards the settlement. Specifically, Specialty National's Complaint contends, in relevant part, that:

20.    Specialty National undertook to defend McMillan and to contribute to the resolution of the Underlying Action because of the failure of OneBeacon to honor its primary contractual obligation to McMillan under the terms of the motor vehicle insurance policy that insured.

24.    OneBeacon has the primary obligation to defend and indemnify McMillan for the Underlying Action under the terms of the motor vehicle liability policy that it issued because Ms. Rhodes' accident arose out of the use of the vehicle within the scope of the insuring provisions of that policy.

---

[11] In addition, see Section II entitled "THE ACCIDENT DID NOT "RESULT FROM" THE "OWNERSHIP, MAINTENANCE OR USE OF A COVERED AUTO" TO IMPOSE COVERAGE UNDER THE ONEBEACON COMMERCIAL AUTO POLICY".
[12] See Exhibit "E", Form CA 00010797, §2(A).

17

Therefore, Specialty National, by and through this action, contends that it has an automobile exclusion in its general liability policy effective to eliminate coverage. If true, then Specialty National, by defending without a reservation of rights, contributed to the settlement as a volunteer and not as a party under a legal compulsion to do so. Moreover, Specialty National knowingly assumed the obligation to defend by accepting and controlling McMillan's defense without a reservation of rights. Given Specialty National's implicit assumption of the obligation to defend and voluntary payment towards settlement, Specialty National has no right of subrogation.

## CONCLUSION

As set forth above, Specialty National is estopped from denying coverage under its general liability policy as a result of its unreasonable and inexcusable delay in asserting an exclusion defense. In addition, Specialty National cannot establish that its general liability policy was not primarily liable in the Underlying Action. Alternatively, OneBeacon has established that the claims made in the Underlying Action did not allege that the Rhodes accident and/or injuries were the result of McMillan's "ownership, maintenance or use of a covered auto."

WHEREFORE, OneBeacon Insurance Company requests that this Honorable Court take the following actions:

> (1)    Declare that OneBeacon Insurance Company's Policy No. CBXA05979 was not primarily liable to provide coverage to Jerry McMillan Professional Tree Service, Inc. in connection with the civil action entitled Marcia Rhodes, et al v. Carlo Zalewski, et al., C.A. No.: 02-01159A (Norfolk Superior Court, Dedham, Massachusetts);

18

(2)     Declare that Specialty National Insurance Company's Policy No.

         3XZ138766-00 was primarily obligated to provide coverage to Jerry

         McMillan Professional Tree Service, Inc. in connection with the civil

         action entitled Marcia Rhodes, et al v. Carlo Zalewski, et al., C.A. No.:

         02-01159A (Norfolk Superior Court, Dedham, Massachusetts);

(3)     Declare that OneBeacon Insurance Company is entitled to equitable

         subrogation from Specialty National Insurance Company in the amount of

         $275,000 in connection with the settlement reached in the Underlying

         Action;

(4)     Enter Judgment in favor of OneBeacon and against Specialty National in

         the amount of $275,000.

(5)     Such other relief as this Court deems proper and just.


                              Respectfully submitted,
                              **ONEBEACON INSURANCE COMPANY,**
                              By its Attorneys,



                              Peter G. Hermes, BBO #231840
                              Randy J. Spencer, BBO #653879
                              HERMES, NETBURN, O'CONNOR &
                              SPEARING, P.C.
                              265 Franklin St., 7th Fl.
                              Boston, MA 02110
                              (617) 728-0050
                              (617) 728-0052 (F)

Dated: January 10, 2006.

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January, 2006, the foregoing documents were served by first class mail upon the following:

              Robert P. Powers, Esq.
              MELICK, PORTER & SHEA, LLP
              28 State Street
              Boston, MA 02109-1775

              Randy J. Spencer

G:\DOCS\RJS\OBI\Specialty Nationa Ins. v. OBI (McMillan Tree)\Pleadings\Memo in Support of Mot for SJ.doc

20