UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SPECIALTY NATIONAL INSURANCE )
COMPANY, )
              )
        Plaintiff, )
              )
-vs-          )   Civil Action No. 04-12306RCL
              )
ONEBEACON INSURANCE )
COMPANY, )
              )
        Defendant. )

**MEMORANDUM OF SPECIALTY NATIONAL INSURANCE COMPANY
IN OPPOSITION TO THE DEFENDANT'S SUMMARY JUDGMENT MOTION**

Specialty National Insurance Company ("Specialty National") opposes the motion for summary judgment submitted by One Beacon Insurance Company ("OneBeacon"). The question for resolution by this Court is whether OneBeacon or Specialty National was obligated to provide insurance coverage to their mutual insured, Jerry McMillan Professional Tree Service, Inc. ("McMillan"), for bodily injury claims made against McMillan arising from a collision of a tractor-trailer truck and an automobile driven by Marcia Rhodes ("Underlying Claim"). OneBeacon issued McMillan a policy of motor vehicle insurance. Specialty National issued McMillan a policy of general liability insurance. OneBeacon should provide coverage because the Underlying Claim arose from a motor vehicle accident reasonably related to McMillan's operation and use of a vehicle insured under OneBeacon's policy. Consequently, its motion for summary judgment should be denied, the Court should enter a judgment declaring that OneBeacon is obligated to provide

insurance to McMillan for the Underlying Claim, and order it to reimburse Specialty National for its $275,000 contribution to the joint settlement of the Underlying Claim.

## Factual Background

On January 9, 2002, Marcia Rhodes suffered catastrophic injuries when her motor vehicle was struck from behind on Route 109 in Medfield, Massachusetts by a tractor-trailer truck driven by Carlos Zalewski (OneBeacon Fact 1)[1]. Rhodes had stopped her car on Route 109 at the direction of a Medway police officer (OneBeacon Fact 2). The officer was providing traffic control because McMillan was engaged in grinding stumps at locations immediately adjacent to the traveled way, and McMillan's pickup, to which a stump grinder was attached, was partly in the roadway and was impeding the flow of traffic (OneBeacon Facts 1 and 2).

Ms. Rhodes and her family brought suit in Norfolk Superior Court against Zaleweski, his employer Driver Logistics, and others for personal injuries (Norfolk Superior Civil Action No. 02-01159A) (OneBeacon Fact 7). Rhodes did not bring a claim against McMillan (OneBeacon Exhibit D). Zalewski and Driver Logistics subsequently filed a third-party complaint claiming that McMillan was a joint tortfeasor and seeking contribution under Massachusetts law (OneBeacon Exhibit C). Zalewski alleged that McMillan was negligent and caused the accident in whole or part by failing to "provide any markers, warning signs and traffic control devices." (OneBeacon Fact 8 and Exhibit C).

At all material times, McMillan was insured under a commercial automobile policy issued by OneBeacon, Policy No. CBXA05979, and a general liability insurance policy issued by Specialty National, Policy No. 3XZ138766-00 (OneBeacon Fact 26). The insuring agreement contained in OneBeacon's policy provided that it would pay:

---

[1] Reference is to OneBeacon's Concise Statement of Undisputed Facts.

> [A]ll sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

(OneBeacon Exhibit I). The insuring agreement contained in Specialty National's policy stated that it would pay:

> [T]hose sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies."

Specialty National's policy also contained an exclusion, Exclusion 2(g), stating that no coverage was provided under the policy for bodily injury:

> arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured.

(OneBeacon Exhibit J). Specialty National undertook to defend McMillan in the Underlying Claim (OneBeacon Exhibit E).

On August 17, 2004, Specialty National and OneBeacon participated in a mediation of Rhodes' claims (OneBeacon Fact 17). Both insurers disputed their coverage obligations to McMillan under the policies they issued (OneBeacon Fact 15 and Exhibit F). Nevertheless, during the course of the mediation, both agreed to fund a settlement with Rhodes of any tort claim against McMillan, the result of which was to bar the contribution claims of Zalewski and Driver Logistics and extricate McMillan from the litigation (OneBeacon Fact 18). Specialty National and OneBeacon agreed to contribute $275,000 each to a total settlement of $550,000, with the understanding that they would reserve their right to seek resolution of their coverage dispute and reimbursement of their contribution from the other (OneBeacon Fact 19). The substance of that agreement was set forth in a subsequent letter drafted by OneBeacon's counsel (Specialty National Exhibit D).

The claims against the other defendants ultimately proceeded to trial. The jury returned a verdict in favor of Ms. Rhodes in the amount of $7,412,000.00. Mr. Rhodes was awarded

$1,500,000. Their minor child, Rebecca Rhodes, was awarded $500,000 (OneBeacon Exhibit E).

## Summary Judgment Standard

Specialty National agrees with OneBeacon's statement of the applicable standard of review. The material facts are undisputed. Interpretation of the subject policies therefore presents a question of law appropriately decided by summary judgment.

## Argument

This case raises the question: which of the two liability insurance policies provides coverage to McMillan for personal injuries suffered by Marcia Rhodes as a result of the motor vehicle accident involving her and Carlos Zelewski? Having acted to protect the interests of this insured by settling the underlying claim before seeking resolution of disputes among themselves, *see, e.g., Liberty Mutual Ins. Co. v. Agrippino*, 375 Mass 108, 375 N.E.2d 702 (1978)(insured's liability resolved before coverage dispute between insurers), Specialty National and OneBeacon now ask the Court to determine which policy applies. The resolution of this issue turns upon the question of whether the Underlying Action arises out of the ownership or use of a covered auto. For the reasons outlined below, it does. Thus, OneBeacon's motor vehicle insurance policy applies.

I.  MARCIA RHODES' CLAIMS AROSE OUT OF A MOTOR VEHICLE ACCIDENT SUFFICIENTLY RELATED TO MCMILLAN'S USE OF ITS COVERED AUTO SO AS TO OBLIGATE ONEBEACON TO PROVIDE COVERAGE UNDER THE MOTOR VEHICLE POLICY.

It is undisputed that Marcia Rhode's injuries resulted from a motor vehicle accident, and that the contribution claim against McMillan was based upon the theory that it had failed to provide adequate warnings that its pick-up truck and attached stump grinder were impeding travel on a public highway. Under Massachusetts law, an injury "arises out of" the use of a vehicle within the provisions of an automobile insurance policy when a causal connection is reasonably apparent

between the use to which the vehicle is being put and the alleged injury. The vehicle does not need to be in motion on a highway, or even physically involved in the accident. Rather, for an injury to be one "arising out of" an accident for purposes of automobile policy, there must be a sufficiently close relationship between the vehicle and the accident. *Ruggerio Ambulance Service, Inc. v. National Grange Mutual Insurance Company*, 430 Mass. 794, 724 N.E.2d 295 (2000). There is no bright line test for what constitutes "sufficiently close." Rather, Massachusetts courts have said that the question whether a particular injury is sufficiently related to an automobile's use must be decided on a case-by-case basis, and requires a judgment call by the court as to where along a continuum of causation the facts of each case fall. *White v. Amer. Cas. Ins. Co.*, 53 Mass. App. Ct. 66, 756 N.E.2d 1208 (2001). In *Tae v. Tae*, 57 Mass. App. Ct. 297, 783 N.E.2d 827 (2003), the Massachusetts Appeals Court stated that "use" of an automobile for purposes of considering the applicability of motor vehicle insurance coverage fairly extends to any activity utilizing the insured vehicle in the manner intended or contemplated by the insured.

The facts supporting the existence of a causal relationship between Ms. Rhode's accident and the use of McMillan's pick-up are compelling. Mr. McMillan was using the insured pick-up and grinder on a public roadway. The grinder was physically attached to the pick-up at all times and dependant upon the vehicle for mobility. On the day in question, McMillan was driving the pick-up on Route 109, a state highway, from site to site and stopping the vehicle along the roadway in order to position and use the attached grinder. Ms. Rhodes was traveling on that highway. She was waved to a stop by a Medfield police officer employed to provide traffic control because McMillan's pick-up truck was impeding free travel on the road. The collision between Mr. Zalewski's tractor-trailer and Ms. Rhodes auto was undeniably a motor vehicle accident. His tractor-trailer truck crashed into the rear Ms. Rhode's vehicle. The complaint against McMillan was that this motor vehicle accident

occurred because McMillan failed to properly warn travelers about the hazard created by the presence of his pickup and grinder along the roadway.

In support of its claim that general liability insurance should apply, OneBeacon takes the position that McMillan's potential liability involved an independent claim of negligent failure to warn unrelated to the motor vehicle. This view is not supportable under Massachusetts case law, statutory law, or regulatory law. In the case of *Phoenix Ins. Co. v. Churchwell*, 57 Mass. App. Ct. 612, 785 N.E.2d 392 (2003), for example, the Massachusetts Appeals Court rejected an attempt to evade application of a motor vehicle exclusion in a homeowners policy where "it would be difficult to separate" the arguably independent negligence claim from use of the vehicle. Massachusetts statutory law includes provisions governing a motor vehicle owner's duty to warn about a stopped or disabled vehicle that impedes travel in a public way. *See, e.g*, G.L. c. 90, §7. Even the regulations cited as a basis for the contribution claim pertain to warnings about "mobile" work. *See, e.g.*, 454 CMR 10.47. A fair assessment of the underlying facts leads inexorably to the conclusion that the relationship between Ms. Rhodes's accident and McMillan's ownership, operation, or use of the insured pick-up was sufficiently close to trigger coverage under the OneBeacon motor vehicle policy.

One Beacon's reliance on *Liberty Mutual v. Agrippino*, 375 Mass. 108, 375 N.E.2d 702 (1978) to dispute the sufficiency of the relationship between the accident and its insured vehicle is misplaced. In that case the insured was not using his own insured motor vehicle. In this case, Mr. McMillan was using his vehicle, and the presence of that vehicle along the side of the roadway was key to the asserted theory of liability. The question presented in the *Agrippino* case was whether the act of providing a defective shackle for use to connect another's motor vehicle to that person's boat trailer was sufficiently related to the use of a motor vehicle to trigger coverage under the insured's motor vehicle policy. Here, by contrast, Mr. McMillan was actively using his covered auto on Route

109 to move the grinder from location to location. His vehicle was stopped on the road and interfering with traffic. The claim of failure to warn about the presence of McMillan's vehicle on the roadway is inseparable from his use of the vehicle. If McMillan had not been using the vehicle, it would not have been on Route 109 obstructing traffic, and there would have been no basis for the claim.

In sum, Ms. Rhode's injuries arose from a motor vehicle accident. McMillan was alleged to have been liable for this accident because he failed to adequately warn about the presence of his vehicle partly on the highway. This alleged liability is reasonably related to the use of his vehicle. Therefore motor vehicle insurance proper applies to the accident.

II.  THE SPECIALTY NATIONAL POLICY EXCLUDES COVERAGE FOR LIABILITY ARISING FROM THE USE OF A MOTOR VEHICLE.

Specialty National's policy contains Exclusion 2(g) which states in pertinent part that the policy does not apply to:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies on the facts of this case. Massachusetts courts have held that the phrase "arising out of" is to be broadly construed when used in an insurance policy exclusion. In the case of *New England Mutual Life Insurance Company v. Liberty Mutual Insurance Company*, 40 Mass.App.Ct. 722, 667 N.E.2d 295 (1996), the Massachusetts Appeals Court interpreted the phrase "arising out of," and stated that use of this phrase in a policy exclusion does not require a showing of a direct causal relationship in order to trigger application of the exclusion. The court stated that when this phrase is used in a liability insurance policy exclusion it is to be construed much broader than "caused by," and should be considered synonymous with "originate" or "come into being."

Subsequent Massachusetts cases have stated that the phrase "arising out of" must be read expansively when used in an exclusion, incorporating a greater range of causation than that encompassed by proximate cause under tort law. *See, e.g., Rischitelli v. Safety Ins. Co.*, 423 Mass. 703, 704, 671 N.E.2d 1243 (1996); *United Nat'l Ins. Co. v. Parish*, 48 Mass.App.Ct. 67, 717 N.E.2d 1016 (1999).

In the case of *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 720 N.E.2d 813 (1999) the Massachusetts Supreme Judicial Court stated that cases interpreting the phrase "arising out of" in insurance exclusionary provisions suggest that a court examining the applicability of such an exclusion should inquire whether there would have been injury "and a basis for the plaintiff's suit in the absence of the objectionable underlying conduct." The claims against McMillan alleged that the presence of his truck and grinder on the roadway presented a hazard and that warning was necessary. The warning would have been about the motor vehicle, which protruded partly into the roadway and obstructed traffic. Without the presence of the pick-up along Route 109, traffic would not have been impeded. The traffic officer would not have been present and Ms. Rhodes would not have been stopped. The accident would not have happened as it did without the involvement of Mr. McMillan's motor vehicle.

A number of Massachusetts courts have had the opportunity of addressing the scope of a motor vehicle exclusion in a liability policy. In *Barnstable County Mut. Fire Ins. Co. v. Lally*, 374 Mass. 602, 373 N.E.2d 966 (1978), the Supreme Judicial Court determined that a homeowner's insurer owed no duty to defend its insured against claims of negligent entrustment of a motor vehicle where the policy excluded coverage for claims "arising out of the ownership, ... operation, [or] use ... of ... any ... motor vehicle." *Id.* The court found that the exclusion applied because the alleged negligence was not exclusive of but rather was "derived" from the ownership, operation, or use of

the motor vehicle. *Id.* In the case of *Ayer v. Imperial Casualty & Indemnity Company*, 418 Mass. 71, 634 N.E.2d 571 (1994), the Town of Ayer sued its professional liability insurer seeking coverage because a lawsuit involving a collision during a high-speed chase contained allegations of negligent training and supervision of police officers, as well as a negligent failure to develop policies and procedures with respect to high-speed chases. The professional liability policy contained an exclusion negating coverage for "acts or occurrences arising out of the ownership, operation, use, loading or unloading of any land motor vehicle." The Supreme Judicial Court held that the professional liability carrier was under no duty to defend or indemnify Ayer since it had automobile insurance specifically purchased to respond to claims involving automobiles. Also, in *Phoenix Ins. Co. v. Churchwell*, 57 Mass. App. Ct. 612, 785 N.E.2d 392 (2003), the Massachusetts Appeals Court upheld the application of a motor vehicle exclusion where "it would be difficult to separate" the arguably independent negligence claim from use of the vehicle. In the present case, McMillan's use of the pickup and his placement of it on Route 109 were at the heart of the liability theory being asserted. This is a liability that motor vehicle insurance is intended to cover, and a type of liability that other types of liability insurers, such as Specialty National, seek to exclude from coverage by use of motor vehicle exclusions.

III. SPECIALTY NATIONAL AND ONEBEACON AGREED TO RESOLVE THE COVERAGE DISPUTE AFTER JOINTLY RESOLVING MCMILLAN'S POTENTIAL LIABILITY SO NEITHER INSURER IS ESTOPPED FROM SEEKING REIMBURSEMENT OF ITS CONTRIBUTION TO THE JOINT SETTLEMENT.

Courts have long recognized the right of an insurance company which pays a claim to seek reimbursement from an insurer that should have satisfied the claim. See *National Union Fire Ins. Co.*, 269 Ga. 768, 769, 504 S.E.2d 673, 675 (1998). An insurer is not deemed a volunteer when it makes a payment on behalf of an insured in good faith and under a reasonable belief that the contract

required the payment. See Appleman, 8A *Insurance Law and Practice* § 4922 at 550. As noted by the Massachusetts Superior Court in the case of *Premier Ins. Co. of Massachusetts v. Empire Fiore and Marine Ins. Co.*, 2002 WL 58465, *5 (Mass.Super.2002):

> The public policy favoring the prompt settlement of valid claims is served by a rule which encourages insurers to act promptly to protect their insureds' interests and to resolve disputes among themselves afterwards.

That is what occurred here.

OneBeacon and Specialty National cooperated together to eliminate the potential liability of McMillan, and agreed to reserve the right to seek reimbursement of its contribution to the settlement from the other. The nature of the agreement between the insurers is evident from their equal contributions to the settlement. Neither company was under any illusion about the nature of the agreement they made. Indeed, counsel for OneBeacon undertook to summarize the substance of the agreement. (See Specialty National Exhibit D, 8/17/04 Email of Attorney Peter Hermes with attached letter). OneBeacon's present suggestion that no agreement was "signed" is a merely an artful attempt to avoid admitting that an agreement was in fact made.

OneBeacon's further attempt to build an estoppel argument based upon Specialty National's participation in McMillan's defense is disingenuous. One who seeks equity should have clean hands. To permit OneBeacon, who sat on the sidelines as McMillan was being defended, to raise Specialty National's participation in the defense as a bar to consideration of the merits of the coverage issues would not be equitable. OneBeacon knew this when it agreed to participate in the mediation, and still it equally participated in crafting the terms under which both insurers jointly resolved McMillan's potential liability at the mediation. It was not misled. It cannot claim detrimental reliance. One Beacon has no principled basis to claim a right to step into the shoes of McMillan to assert an estoppel claim. Indeed, McMillan does not have such a claim because its potential liability

was settled. *See, e.g., Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 419 Mass. 462, 468, 645 N.E.2d 1165 (1995)(insurers satisfied settlement amount, and insured not liable for any: "[e]ven assuming some sort of adverse reliance on the part of [the insured], no harm could have arisen from it."). Here, the insurers crafted a resolution that protected the interests of their mutual insured, and reserved rights to reimbursement from each other.

A proper response to an insurer who seeks to avoid the merits of a coverage dispute by arguing that another insurer voluntarily handled the matter and should be barred from seeking recovery of sums that it properly should have paid was outlined by Judge Ralph Gants in the case of *United States Fire Ins. Co. v. Peerless Ins. Co.*, 2001 WL 1688368, *6 (Mass.Super.2001). He wrote:

> [W]hen two insurance companies . . . insure the same risk, and one insurance company accepts its coverage responsibilities, defends the claim, and pays . . . while the second insurance company evades its obligations . . . , equity demands that the responsible insurance company have legal recourse to ensure that the irresponsible company pays its fair share and reimburses the responsible company . . . . Without this equitable principle, the law provides an incentive for a co-insurer to run away from a claim in the hope that the other co-insurer will not. Generally, equity does not reward those who shirk their obligations, and insurance law should not be an exception to this general rule. Whether one calls it equitable contribution or equitable subrogation, see *Hartford Casualty Insurance Co. v. New Hampshire Insurance Co.*, 417 Mass. 115, 124 n. 7, 628 N.E.2d 14,19 (1994), there must be an equitable principle that permits one co-insurer to seek contribution from another co-insurer who has violated its coverage obligations, and left the "good" co-insurer holding the bag.

Specialty National makes no claim here about "good insurers" or "bad insurers." It agreed with OneBeacon to jointly fund a settlement and reserve rights between them. The Court should reject OneBeacon's present attempt to use estoppel, an equitable remedy, to avoid the consideration of the merits of the coverage claim contemplated by that agreement.

IV. THE INTERPRETATION OF THE POLICIES IS A QUESTION OF LAW, AND NEITHER INSURER'S INTERNAL VIEWS ON COVERAGE ARE DETERMINATIVE.

OneBeacon devotes much space in its memorandum to the suggestion that Specialty National should be precluded from arguing about which insurer is properly held to provide coverage because it has "admitted" that its policy provided coverage for the Rhodes' accident. It bases this argument upon evidence of Specialty National's internal consideration about whether it owed coverage to McMillan, and by the fact that Specialty National elected to defend McMillan in the action. These facts, while true, are of no legal significance. They are no more dispositive of the coverage question presented in this action than whatever internal discussions prompted OneBeacon to attend the mediation and contribute to funding the settlement. An insurer's preliminary internal analysis and opinions about coverage are not relevant to interpreting the plain language of an insurance policy. *Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc. v. Shelby Mut. Ins. Co.*, 396 Mass. 633, 487 N.E.2d 1371 (1986)(use of extrinsic evidence to interpret plain language of an insurance policy is unnecessary). Even accepting One Beacon's view that Specialty National's internal discussions have some relevance, testimonial admissions on questions of law are not binding under Massachusetts law. *See, e.g. Gow v. Buckminster Hotel*, 336 Mass. 606, 146 N.E.2d 924 (1958). Further, the fact that a defense is provided does not bind an insurer on the question of indemnity. *Newell-Blais, supra.* Thus, the application of the OneBeacon and Specialty National insurance policies to the established facts remains a question of law; a question that is appropriately presented to this Court for decision.

## Conclusion

For the foregoing reasons, Specialty National requests that Court deny OneBeacon's motion for summary judgment, allow its cross-motion for summary judgment, and enter a judgment

declaring that it is entitled to be reimbursed by OneBeacon for its $275,000 contribution to the settlement the insurers made on behalf of McMillan.

      SPECIALTY NATIONAL INSURANCE COMPANY
      By its attorney,

      /s/ *Robert P. Powers*
      Robert P. Powers, BBO No.544691
      Melick, Porter & Shea, LLP
      28 State Street
      Boston, MA 02109
      (617) 523-6200
      rpowers@melicklaw.com

Dated: January 24, 2006

## Certificate of Service

I hereby certify that Specialty National' Opposition To OneBeacon's Summary Judgment Motion, attached exhibits, and this supporting memorandum, filed through the ECF system, will be electronically sent to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 24, 2006.

      /s/ *Robert P. Powers*
      Robert P. Powers, BBO No.544691
      Melick, Porter & Shea, LLP
      One Beacon Street
      Boston, MA 02109
      (617) 523-6200
      rpowers@melicklaw.com